J-S71011-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAYSON CHAMBERS | : | |
| | : | |
| Appellant | : | No. 739 EDA 2019 |

Appeal from the PCRA Order Entered February 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0911081-2003

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAYSON CHAMBERS | : | |
| | : | |
| Appellant | : | No. 740 EDA 2019 |

Appeal from the PCRA Order Entered February 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0911091-2003

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAYSON CHAMBERS | : | |
| | : | |
| Appellant | : | No. 746 EDA 2019 |

Appeal from the PCRA Order Entered February 15, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-1109611-2004

BEFORE: BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 22, 2020**

Jayson Chambers appeals from the dismissal of his Post-Conviction

Relief Act ("PCRA") petition. After careful review, we affirm.

This Court previously summarized the relevant factual history of these

cases as follows:

> . . . . Between the summer of 2000 and December 2002, [A]ppellant, approximately [thirty] years of age, sexually abused A.L. . . ., C.E. . . ., and A.R. . . ., all minors under the age of 16.
>
> A.L. resided with [A]ppellant for about three years, from age eight to age eleven. During that time, A.L. slept in the same room as [A]ppellant and his two other children.[1] Appellant inappropriately touched A.L. when she was [eleven] years old. During the act, [A]ppellant unzipped and pulled down A.L.'s pants, pulled down her underwear, and completely undressed himself. Thereafter, [A]ppellant sexually abused A.L., forcibly penetrating her vagina with his penis while groping her breasts. He continued the assault despite her cries and pleas to cease. A.L. testified that she refrained from immediately telling someone because [A]ppellant threatened to kill her. She felt justified in this belief because [A]ppellant had physically assaulted her on numerous occasions, sometimes using an extension cord. Appellant's son testified that he witnessed A.L. lying on the bed while [A]ppellant hovered over her unclothed, and that [A]ppellant also had physically abused him. Appellant eventually asked A.L. to leave his residence and return to her mother because of a sexual abuse allegation lodged against him by C.E.
>
> C.E., A.L.'s sister, testified that [A]ppellant inappropriately touched her on two separate occasions. On both occasions, she was visiting for the weekend to spend time with her sister. The first time [A]ppellant touched her breasts. During the second instance of abuse, he placed his hands underneath her shirt and

---

[1] Appellant's two children share the same initials. Therefore, for ease of identification we refer to them, in order of age, as J.C. and J.C.2. **See** N.T. Jury Trial Transcript, 12/6/04, at 40 (indicating the dates of birth of J.C. and J.C.2).

groped her breasts while standing behind her and penetrated her vaginally with his fingers.  C.E. later relayed these events to her aunt and mother.

A.R., [A]ppellant's cousin, testified her first sexual relationship with [A]ppellant ensued around November 2012.[5] She testified that she considered [A]ppellant her best friend prior to the sexual abuse.  On the first occasion, [A]ppellant pushed A.R. down on the bed, pulled her pants and underwear down, and forcibly penetrated her vagina.  She testified that despite her cries, [A]ppellant persisted.  A.L. and [A]ppellant's son testified they witnessed [A]ppellant having sexual intercourse with A.R. Appellant engaged in sexual intercourse a second time with A.R. and she testified she cried "hysterically, like loud" this time.[6]  As a result of one of these sexual encounters, A.R. became impregnated and delivered a baby boy on September 23, 2003.[7] A.R. did not immediately disclose the identity of the father to her family.  Over objection, A.R. testified she fears [A]ppellant because he physically abused her on numerous occasions and choked her mother during a disagreement.

_____

[5] During direct examination A.R. testified the first time she engaged in sex with [A]ppellant was in December 2002, however, during cross-examination she testified that the sexual encounter actually occurred in November 2002.

[6] Appellant resided with A.R. and her family at the time of this assault.

[7] DNA tests later confirmed [A]ppellant is the father of the child.

**Commonwealth v. Chambers**, 959 A.2d 458 (Pa.Super. 2008) (unpublished

memorandum) ("**Chambers II**") (citations to the record omitted).

Appellant was arrested and charged with various sexual offenses as to

all three minors.  Appellant waived his right to a jury trial and proceeded to a

bench trial.  At trial, all three victims testified and DNA evidence was

introduced that Appellant was the father of A.R.'s baby.  At the conclusion of

the trial, the court found Appellant guilty of rape, indecent assault, and endangering the welfare of a child as to A.L.; indecent assault as to C.E.; and statutory sexual assault as to A.R. On March 30, 2005, Appellant was sentenced to an aggregate term of fifteen to thirty years of incarceration. Appellant filed post-sentence motions, which were denied, and a timely notice of appeal. After Appellant failed to timely comply with the trial court's Pa.R.A.P. 1925(a) order, we dismissed the appeal. *See Commonwealth v. Chambers*, 913 A.2d 939 (Pa.Super. 2006) ("*Chambers I*") (unpublished memorandum).[2]

On July 17, 2007, Appellant filed a PCRA petition requesting the reinstatement of his direct appeal rights *nunc pro tunc*, which the PCRA court granted. On appeal, Appellant challenged the trial court's consolidation of the charges against him; its allowance of A.R.'s testimony regarding Appellant's physical abuse as an explanation for her delay in reporting the abuse; and that the rape, endangering the welfare of a minor, and two indecent assault verdicts were against the weight of the evidence. We rejected Appellant's arguments and affirmed his judgment of sentence. *See Chambers II*, *supra*. After another successful PCRA petition seeking the reinstatement of appellate rights, Appellant filed a petition for allowance of appeal *nunc pro*

---

[2] While the direct appeal was pending, Appellant filed a *pro se* PCRA petition which was dismissed.

- 4 -

*tunc*, which was denied. ***See Commonwealth v. Chambers***, 78 A.3d 1089 (Pa. 2013) ("***Chambers III***").

On June 27, 2014, Appellant filed a timely *pro se* PCRA petition in which Appellant raised numerous allegations of trial counsel, appellate counsel, and PCRA counsel ineffectiveness. Additionally, he alleged the discovery of new evidence that would exonerate him in the form of a witness recantation. Finally, he listed a multitude of alleged instances of prosecutorial misconduct and attached numerous exhibits. On January 22, 2018, following years of litigation and changes of counsel, Appellant, through Peter Levin, Esquire, filed an amended PCRA petition raising the issues alleged by Appellant in his *pro se* petition. After the Commonwealth filed a motion to dismiss, the PCRA court issued notice of its intent to dismiss the petition as meritless and without a hearing. On February 15, 2019, the PCRA court dismissed the PCRA petition. This timely appeal followed. Appellant was not ordered to file a Pa.R.A.P. 1925(b) statement; however, the PCRA court did file a Rule 1925(a) opinion.

Appellant raises four issues, which we have reordered for ease of disposition:

    I.     Whether the court erred in not granting relief on the PCRA petition alleging counsel was ineffective.

    II.    Whether the court erred in not granting relief on the PCRA petition due to newly discovered evidence.

    III.   Whether the court erred in not granting relief on the PCRA petition alleging prosecutorial misconduct.

IV. Whether the court erred in denying the Appellant's PCRA petition without an evidentiary hearing on the issues raised in the amended PCRA petition regarding trial counsel's ineffectiveness.

Appellant's brief at 10.

We begin with a discussion of the pertinent legal principles. Our "review is limited to the findings of the PCRA court and the evidence of record," and we do not "disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error." *Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa.Super. 2012). Similarly, "[w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions." *Id*. "[W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary." Finally, we "may affirm a PCRA court's decision on any grounds if the record supports it." *Id*.

Appellant's first claim contains two sub-parts, alleging trial and appellate counsel ineffectiveness. In reviewing claims of ineffective assistance of counsel, counsel is presumed to be effective, and a PCRA petitioner bears the burden of proving otherwise. *See Commonwealth v. Becker*, 192 A.3d 106, 112 (Pa.Super. 2018). To do so, a petitioner must plead and prove that: (1) the legal claim underlying his ineffectiveness claim has arguable merit; (2) counsel's decision to act (or not) lacked a reasonable basis designed to

effectuate the petitioner's interests; and (3) prejudice resulted. *Id*. The failure to establish any of the three prongs is fatal to the claim. *Id*. at 113.

In his first sub-claim, Appellant alleges that direct appeal counsel was ineffective in the manner that he litigated certain weight-of-the-evidence issues on appeal. *See* Appellant's brief at 21-24. Specifically, Appellant argues that the outcome of the direct appeal would have been different if counsel had included weight of the evidence claims regarding the inconsistencies between the testimony of A.L. and J.C. regarding the dates and locations of the assaults, and the absence of any physical evidence to support A.L.'s testimony that Appellant physically assaulted her with an extension cord. *Id*.

By way of background, direct appeal counsel included a claim that the convictions regarding A.L. were against the weight of the evidence because the medical records, school records, and testimony of the witnesses failed to corroborate the traumatic effects of the abuse described by A.L. As a result, the Commonwealth contends that this claim is a thinly-veiled attempt to re-litigate the previously unsuccessful challenge to the weight of the evidence by slightly altering the attack on A.L.'s credibility. *See* Commonwealth's brief at 15; *see also* 42 Pa.C.S. § 9543(a)(3) (in order to be eligible for PCRA relief, the allegation of error must not have been previously litigated). The PCRA court agreed, rejecting the current weight of the evidence claim. *See* PCRA Court Opinion, 4/29/19, at 8-10.

The record supports the PCRA court's conclusion that the trial court expressly found A.L's testimony credible in spite of the inconsistencies Appellant points to here, rendering an additional appellate challenge on these grounds meritless. *See Commonwealth v. Hannibal*, 156 A.3d 197, 217 (Pa. 2016) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim."). During closing argument, trial counsel specifically argued that Appellant should be acquitted on the basis that there were inconstancies between all of the victims' statements from when they were initially made, to the preliminary hearing, and then at trial as to when and where the assaults happened. *See* N.T. Jury Trial, 12/16/04, at 90-92. The trial court agreed that inconsistencies existed, even giving an example that one victim testified that an assault happened on a day that it could not have occurred because Appellant was still in prison. *Id*. at 92. Despite these inconsistencies, the court still found the victims' testimonies to be the most persuasive evidence in the case:

[Trial Court]:    But, again, you know, you're not talking about – you know, I had a case in which the defendant was in prison, okay, and the period that was involved definitely convinced me that he couldn't have done it; so, as a result thereof, he was found not guilty.

Here we have a youngster talking about – and she testified on the witness stand, "Well, it was about this time." And it's not a question of he was off [sic]–she was off ten months, a year, a year and a half. She was off, what, about a month, a month and a half, two months. You

know, so that's the – again, I'm telling you what's going to influence me and what's not.

[Trial Counsel]: Right. But—

[Trial Court]: That's not going to influence me.

N.T. Jury Trial, 12/16/04, at 92-93.

After the Court announced its verdict, Appellant immediately uttered, "[t]his is crazy." *Id*. at 99. The court responded to Appellant's comment by offering an explicit explanation as to why it found A.L. and J.C.'s testimonies so convincing:

Sir, I sat right over there and I watched that young lady testify –

. . . .

I saw that little girl testify and I watched her like a hawk, okay. And let me tell you something, that little girl came across very, very candidly. She came across very, very candidly. In fact, I watched her. And that's why I sit over there, because over here I can't see her face. And I don't know how any judge could determine the demeanor – because that's one of the factors that I have to take into consideration, is the demeanor of a witness. If I sit over here and see the back of her head, you got a perfect right later on to go up to the Superior Court and say, "The judge didn't do his job right, because he didn't see what that little girl's – what her actions were when she was testifying, he could only see her head."

And I watched your son very, very closely. And with that boy there might have been some inconsistencies there, yes. But let me tell you something, I'm convinced that he saw what he saw.

And so it's because of all those reasons I just stated, sir.

*Id*. at 99-101.

Here, the trial court plainly found A.L. and J.C.'s testimony convincing. To the extent there were inconsistencies in A.L.'s testimony, the trial court was free to weigh the evidence and resolve those inconsistencies in A.L.'s favor. *See Widmer*, *supra*. Given the trial court's findings, Appellant's previously unsuccessful appellate challenge to A.L.'s credibility, and our narrow standard of review, Appellant has not convinced us that the PCRA court incorrectly concluded that his claim lacks arguable merit. Accordingly, no relief is due.

In his second sub-claim, Appellant alleges that trial counsel was ineffective for failing to interview Appellant's son J.C.2, the victims' aunt Mia Granger, and various unnamed DHS employees. *See* Appellant's brief at 24-27. He also attacks trial counsel's failure to call these witnesses to testify on his behalf. *Id*. In order to prevail on an ineffective assistance claim for failing to call a witness, a petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *See Commonwealth v. Johnson*, 966 A.2d 523, 536 (Pa. 2009). Thus, counsel will not be found ineffective for failing to call a witness unless the petitioner can show that the witness's testimony would have been helpful to the defense. *See Commonwealth v. Snead*, 45 A.3d 1096, 1109 (Pa. 2012).

In its opinion, the PCRA court gave a thorough explanation for denying all three of Appellant's allegations regarding counsel's alleged failures to call witnesses:

> In the case at bar, [Appellant] claims that [t]rial [c]ounsel was ineffective for failing to interview two witnesses. [Appellant] claims that trial counsel failed to interview [Appellant's] son [J.C.2], and [A.L. and C.E.'s] aunt, Mia Granger. However, [Appellant] failed to state the information these witnesses had that would have assisted [Appellant] or changed the outcome of the trial. Nothing is known about the content of the prospective testimony from either witness, therefore [Appellant] is unable to carry his burden to demonstrate that the absence of these witnesses' testimony was so prejudicial as to have denied [Appellant] a fair trial.
>
> Furthermore, [Appellant] is incorrect that trial counsel failed to reach out to Granger. During closing arguments, trial counsel stated the following:
>
>> And certainly there has been no testimony from the aunt, Mia Granger, Your Honor. And, rest assured, we have made every effort to locate her, Judge. We have made every effort to locate her. But that's just the way things turned out.
>
> Clearly, trial counsel made the attempt to contact this witness. This witness apparently made herself unavailable, which may be because she was not willing to testify at trial.
>
> Moreover, [Appellant] claims that trial counsel should have interviewed employees of the Philadelphia Department of Human Services ("DHS") concerning the homicide of a young girl by [Appellant's] brother, Jerry. According to [Appellant], he was charged with the instant sexual assaults because his brother would not lie on behalf of DHS in his own homicide case in which Jerry was convicted of murdering his niece by beating her to death. [Appellant] presented mere speculation without evidentiary support. Additionally, trial counsel could not have interviewed any of the DHS workers involved in Jerry Chambers's unrelated homicide of his niece because [Appellant] was not a party to its investigation and DHS's work is confidential. On top

- 11 -

of that, any evidence involving the homicide trial or investigation of [Appellant's] brother would not have been admissible at trial in this case because it is completely irrelevant.

PCRA Court Opinion, 4/29/19, at 7-8 (citations and unnecessary capitalization omitted).

As the PCRA court observed, Appellant has not shown that any of these witnesses were available and willing to testify, or that if their testimony was admitted, it would have been helpful to the defense. A review of his *pro se* and amended petitions also reveals that he has never provided certifications for these witnesses, despite requesting an evidentiary hearing.[3] Nonetheless, Appellant argues that J.C.2 and Mia Granger's testimony "would have been beneficial" to his defense. **See** Appellant's brief at 24. However, he does not name any DHS witnesses or proffer what this alleged testimony might have revealed. Further, without certifications pursuant to 42 Pa.C.S. § 9545(d)(1), he would not have been able to call these witnesses to testify at an evidentiary hearing even if they were available and willing to testify. Accordingly, we find

---

[3] In order to call witnesses at a PCRA hearing, a petitioner must first submit witness certification forms prior to the hearing. More specifically, the PCRA requires:

Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each intended witness stating the witness's name, address, date of birth and substance of testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S. § 9545(d)(1).

that the PCRA court did not abuse its discretion in concluding that Appellant had failed to demonstrate that trial counsel was ineffective. **Accord Snead**, **supra**.

Next, Appellant alleges that he has uncovered evidence that exonerates him. **See** Appellant's brief at 28-31. In order to obtain relief on an after-discovered evidence claim, a petitioner must demonstrate that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. **See Commonwealth v. Washington**, 927 A.2d 586, 595-96 (Pa. 2007).

By way of background, the investigation that led to the charges against Appellant arose from an interview of J.C. by a homicide detective who was investigating Appellant's brother Jerry. **See** N.T. Jury Trial, 12/6/04, at 36-38; **see also** N.T. Jury Trial, 12/16/04, at 71-78. During the course of the interview, J.C. spontaneously volunteered that he had seen Appellant have sex with A.L. and A.R. The homicide unit passed this information on to the special victims unit, which sent a detective to interview A.L. at her elementary school. During the interview, A.L. disclosed that Appellant had sexually and physically assaulted her and her sister, C.E. The detective than proceeded to interview C.E. and A.R. separately. Both of them confirmed that they were sexually assaulted by Appellant. Additionally, A.R. confirmed that Appellant

was the father of her baby, which DNA testing later corroborated. At trial, J.C., A.L., C.E., and A.R. all testified about Appellant's sexual and physical abuse.

Appellant's after-discovered evidence claim is derived from a letter that J.C. wrote to Appellant's brother, Jerry Chambers, recanting a statement that he made in Jerry Chambers' separate trial for murder. In the letter, J.C. states that he never saw his uncle physically assault anyone, but was enticed to lie by agents of the Commonwealth with promises of a better life. *See* Appellant's brief at 29. However, J.C. does not recant his eyewitness accounts of Appellant's sexual assaults of A.L. and A.R. While Appellant acknowledges that this letter does not reference or concern his case, he nonetheless argues that because J.C. was the "most important witness for the Commonwealth" in his trial and this letter "proves the point that his son was told to lie in general," it would have provided powerful impeachment evidence in his own case. *Id*. at 27, 30.

The Commonwealth counters that Appellant has not uncovered new evidence. Instead, the Commonwealth asserts that Appellant has only provided "speculation" that his son may have testified inaccurately at trial. *See* Commonwealth's brief at 18. Even if this letter is considered evidence, the Commonwealth argues that Appellant has failed to show that it would be used for anything more than impeachment. *Id*. The PCRA court agreed, finding that Appellant had failed to adequately develop this claim, and that

the evidence against him was so overwhelming that this impeachment testimony would not have changed the outcome of the trial. *See* PCRA Court Opinion, 4/29/19, at 11-12. We concur.

Appellant's claim is frivolous and deficiently pled. Importantly, Appellant concedes that J.C. does not even refer to Appellant's case in the letter. *See* Appellant's brief at 30. Simply put, an unsworn letter recanting testimony in a different case, does not constitute a recantation in **this** case. Furthermore, Appellant plainly states that he seeks to use this evidence solely for the purposes of impeachment. *Id*. Even if Appellant had presented recantation testimony relevant to this case - which he did not do - his challenge still would have been unsuccessful. ***See***, ***e.g.***, ***Commonwealth v. Moore***, 633 A.2d 1119, 1136 (Pa. 1993) (rejecting witness's statement against penal interest as reliable after-discovered evidence, where sole purpose of statement was to impeach testimony connecting defendant to crime). Accordingly, we discern no abuse of discretion in the PCRA court's determination that Appellant's claim failed to meet the after-discovered evidence requirements. No relief is due.

In his third claim, Appellant lists eleven instances of alleged prosecutorial misconduct by referring to eleven exhibits. *See* Appellant's brief at 31-32. However, these exhibits were not attached to Appellant's PCRA petition, and he has not included them in any submissions to this Court. While Appellant has detailed what each exhibit prospectively contains, he has not

offered any explanation as to how any of these exhibits amounts to prosecutorial misconduct, or why copies of this documentation were never adduced. Consequently, the PCRA court found these claims were waived, both as "completely undeveloped" and because Appellant did not litigate these allegations of prosecutorial misconduct on direct appeal. *See* PCRA Court Opinion, 4/29/19, at 10. We agree with the PCRA court that Appellant's claims are insufficiently pled; hence, they cannot succeed and dismissal without a hearing was appropriate.

In order to succeed on a prosecutorial misconduct claim, Appellant must prove that the prosecutor's misconduct violated a constitutionally or statutorily protected right, such as the Fifth Amendment's privilege against compulsory self-incrimination or the Sixth Amendment's right to a fair trial. *See Commonwealth v. Burno*, 94. A.3d 956, 974 (Pa. 2012). In order "[t]o constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial. The touchstone is the fairness of the trial, not the culpability of the prosecutor." *Commonwealth v. Spotz*, 47 A.3d 63, 97 (Pa. 2012) (internal citations omitted).

Here, Appellant has alleged that prosecutorial misconduct occurred and listed multiple exhibits to support his contentions. However, he has not offered any analysis identifying the precise misconduct, or connected that alleged misfeasance to his list of exhibits. As such, Appellant's deficient

pleading has deprived us of the ability to discern what his specific allegations are and we are unable to meaningfully review his claim. Therefore, he has failed to convince us that the PCRA court erred when it dismissed this claim as waived.

In his final allegation of error, Appellant argues that the PCRA court wrongly denied his request for an evidentiary hearing. **See** Appellant's brief at 18-19. Without any elaboration, he asserts that he was entitled to an evidentiary hearing on his ineffective assistance of counsel claims. **Id**. We are unpersuaded by Appellant's boilerplate allegation.

It is well-settled that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa.Super. 2008). In order "to obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." **Commonwealth v. Hanible**, 30 A.3d 426, 452 (Pa. 2011).

Appellant has done nothing to refute the PCRA court's conclusion that a PCRA hearing was unnecessary. **See Commonwealth v. Watkins**, 108 A.3d 692, 735 (Pa. 2014) (concluding that if an appellant makes no attempt to identify specifically the "legitimate material factual disputes" that he alleges

- 17 -

warranted a hearing, as well as develop relevant argument, his "claim of PCRA court procedural error cannot succeed"); *see also Commonwealth v. Jones*, 912 A.2d 268, 290 (Pa. 2006) (rejecting an appellant's assertion that his other claims warranted a hearing when he failed both to identify and argue with specificity what factual issues remained in contention).

Accordingly, we cannot find that the PCRA court's denial of an evidentiary hearing was an abuse of discretion. *See Hanible*, *supra* at 452-53 ("Appellant has failed to satisfy [his] burden as his reliance on speculation and failure to assert facts, which, if believed, would support his claim cannot be equated with a genuine issue concerning a material fact that warrants an evidentiary hearing"). As such, no relief is due on this claim.

Order affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 4/22/2020*

- 18 -